IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EARL D. JOHNSON,

    Plaintiff,

    v.

NP YVETTE LEDJO, et al.,

    Defendants.

Civil Action No.:  PX-22-67

**MEMORANDUM OPINION**

Earl D. Johnson, an inmate at Roxbury Correctional Institution ("RCI"), has filed suit against several medical providers pursuant to 42 U.S.C. § 1983, alleging delay and denial of medical care in violation of the Eighth Amendment to the United States Constitution.  ECF No. 7. Pending is the motion to dismiss or alternatively for summary judgment filed by Dr. Maksed Choudry, Dr. Contah Nimely, and nurse practitioner Yvette Ledjo.  ECF No. 23.  Also pending is Warden Carlos D. Bivens' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  ECF No. 31.  Johnson has responded.  ECF Nos. 30, 36.  After careful review, the Court finds no hearing is necessary.  Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, the Defendants' dispositive motions are granted.

I.    **Background**

For the last few years, Johnson has suffered from a recurring fungal infection under the nail of his left middle finger.  ECF No. 7 at 2.  The Complaint faults the medical defendants for failing to properly treat the infection, and accuses Warden Bivens of failing to ensure that the medical staff provide him adequate medical care.  *Id.* at 3.  Johnson seeks monetary damages and to have his finger surgically repaired.  *Id.* at 4.

The parties have supplied the relevant medical records[1], summarized as follows.  Sometime in late 2017 or early 2018, Johnson burned his finger with boiling liquid.  ECF No. 23-5 at 198; ECF No. 23-2 at ¶ 6.  After immediate treatment and evaluation for the burns, Johnson began to have problems with subsequent infection.  ECF No. 23-5 at 199.  On February 20, 2018, Johnson saw nurse practitioner Ledjo.  His finger was swollen and infected.  ECF No. 23-2 at ¶ 6.  She ordered "a Medrol pack and the antibiotic Keflex" as treatment.  *Id.*

Johnson returned to medical on March 2, 2018, complaining that his finger was still in pain.  ECF No. 23-5 at 202.  The nail bed was also swollen, discolored, and painful to touch.  Another nurse referred Johnson for a provider consult, and on April 12, 2018, nurse practitioner Olufemi Olawale examined Johnson's finger.  Olawale explained to Johnson that the finger's appearance was consistent healing after a burn.  *Id.* at 209.  Johnson asked that nurse to remove his fingernail or provide a fungal cream.  ECF No. 23-5 at 228.

Evidently, Johnson's problems with his finger persisted.  On October 31, 2018, Johnson saw nurse practitioner Charles Kuhens who recommended treating the fungus with orally administered Lamisil if Johnson's liver function was normal.  *Id.* at 230.  However, a nurse practitioner Ledjo examined Johnson the next day, and she recommended surgical removal of the fingernail instead.  Johnson agreed to the removal.  *Id.* at 238; ECF No. 23-2 at ¶ 16.

---

[1] Warden Bivens also moves to seal Johnson's medical records.  ECF No. 33. Johnson has not directly responded to that motion, but he has attached medical records to his summary judgment opposition and did not ask this Court to seal those records.  The public retains a presumptive right to access judicial records.  *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).  Accordingly, the movant bears the burden of demonstrating that sealing such records protects "a compelling government interest" and that the sealing request "is narrowly tailored to serve that interest."  *Doe v. Public Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014) (internal quotation marks and citation omitted).  Although medical records may include sensitive information which often does justify sealing, no such showing has been made here.  *Cf. Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).  The motion is thus denied.

On January 3, 2019, nurse practitioner Ledjo excised the fingernail without complication. ECF No. 23-5 at 5.  Ledjo also ordered daily dressing changes, and prescribed ibuprofen and a five-day course of antibiotics.  ECF No. 23-2 at ¶ 17.  During a follow up appointment on January 30, 2019, Johnson had no complaints, and the nail bed appeared to be healing normally without any signs of infection.  ECF No. 23-5 at 7, 9.

Two weeks later, Johnson reported to nurse Tracie Fontes that his finger was swollen and hurt to bend.  *Id.* at 10.  Fontes referred Johnson to a medical provider for assessment.  *Id*.  On March 4, 2019, Ledjo examined Johnson and noted that the nail was growing well and the swelling was not out of the ordinary.  ECF No. 23-2 at ¶ 20.  Johnson denied any pain, and no further appointments were scheduled.  *Id*.

For the next eleven months, Johnson did not seek medical attention for his finger.  But on February 27, 2020, during an appointment with nurse Kelley Green, Johnson reported that he believed the fungus had reappeared and the nail had become thick and discolored.  ECF No. 23-5 at 40.  Within a few days, nurse practitioner Ledjo examined the finger and confirmed that Johnson once again had a fungal infection.  *Id.* at 43.  At Johnson's request, Ledjo ordered topical antifungal cream, Tinactin.  ECF No. 23-2 at ¶ 24.  This was the last time Ledjo treated Johnson.  *Id.*

On July 27, 2020, Johnson was transferred to RCI.  ECF No. 23-5 at 53.  Fifteen months later, on December 16, 2021, Johnson filed an Administrative Remedy Procedure ("ARP") complaining about the inadequate medical treatment he received for his finger.  ECF No. 31-3 at 2 (ARP RCI-0781-21).  Warden Bivens dismissed the ARP as untimely filed.  *Id.* at 1.  Johnson appealed the dismissal to the Commissioner of Correction and to the Inmate Grievance Office ("IGO").  ECF No. 31-3 at 10; ECF No. 31-4 at 16.  The IGO dismissed his appeal because his complaint was beyond its jurisdiction.  ECF No. 31-4 at 17.

About a week after Johnson had filed the ARP, he saw nurse Coretha Tassi during a sick call because his finger was black, swollen, and painful.  ECF No. 23-5 at 66.   The nurse cleaned his finger bacitracin and wrapped it; Johnson was also given Tylenol for pain.  *Id.*  At the next visit a few weeks later, physician assistant Crystal Jamison diagnosed Johnson with "onychia," or inflammation of the nailbed usually caused by bacteria.  Choudry Decl., ECF No. 23-3 at ¶ 8. Jamison ordered an antibiotic and x-rays of Johnson's fingers.  ECF No. 23-5 at 69.  The x-ray did not reveal any fracture or dislocation, only mild degenerative changes.  *Id.* at 135.

On February 7, 2022, Johnson saw nurse Marion Diaz.  His 's finger was mildly swollen and "mycotic," which is when a fungal infection causes the nail to separate from the nailbed and become "thick and fragile."  ECF No. 23-5 at 73; ECF No. 23-3 at ¶ 12.  Usually, a mycotic nail is treated with oral antifungals or medicated nail cream.  *Id.*

Johnson saw Dr. Choudry two days later.  Johnson discussed with Dr. Choudry that after the fingernail had been removed, it grew back thick and black.  ECF No. 23-5 at 77.  Dr. Choudry advised Johnson that the nail needed to be removed again, but this time "with debridement of the nailbed."  ECF No. 23-3 at ¶ 13.  Dr. Choudry also enrolled Johnson in the chronic care clinic for more consistent follow-on treatment.  Johnson also saw nurse Quina Kum for a sick call a couple of days later.  The finger was still swollen around the tip, and he was prescribed Motrin.  ECF No. 23-5 at 78.

About a month later, on March 6, 2022, Johnson complained to nurse Green that he wished to see a specialist for his ongoing problems involving his finger.  *Id.* at 80.  The finger appeared swollen and the nail was discolored, so Green referred Johnson to a medical provider.  *Id.*  Two days later, Johnson saw nurse Kaddie Kallon.  *Id.* at 84.   Johnson complained to Kallon that he

did not want to see nurses anymore, and he requested that he be seen by a specialist.  Kallon placed a provider referral for him.  *Id.*

On March 8, 2022, Johnson filed a second ARP because he had not been referred to a specialist for surgery.  ECF No. 31-5 at 2 (ARP RCI-0206-22).  Warden Bivens sustained the complaint.  *Id.* at 1, 3-4.  The next time Johnson saw Dr. Choudry on March 30, 2022, Choudry requested a surgical consultation and ordered antibiotics for him.  ECF No. 23-3 at ¶ 17; *see* ECF No. 23-5 at 95.  The utilization management review team, however, denied Dr. Choudry's request for a surgical consult in favor of more conservative medication management.  ECF No. 23-5 at 89, 91.

Johnson attended several additional appointments with medical personnel to treat his finger.  He received several other medications designed to treat fungal infections.  ECF No. 23-5 at 97-104.   By the time Johnson saw Dr. Choudry in July, it was clear that the medications were not working. ECF No. 23-5 at 105, 107.   Johnson had been referred for a dermatology consult which was approved.  *Id.* at 106, 107-08; *see* ECF No. 23-3 at ¶ 23.   Johnson was scheduled to have this appointment in November 2022.  ECF No. 30 at 2.

With these facts in mind, the Court turns to Defendants' motions.

## II.    Standard of Review

Defendants move to dismiss Johnson's claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56.  Such motions implicate the Court's discretion under Rule 12(d).  *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).   To survive a motion to

dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Johnson's response to the dispositive motions demonstrates that he knows Defendants seek summary judgment. ECF Nos. 30, 36. Furthermore, Johnson does not object to converting the motion to one for summary judgment, and appends record evidence to his opposition. The Court will thus construe the motions as seeking summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to … the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639,

645 (4th Cir. 2002).  Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

## III.    Analysis

The Court turns first to Warden Bivens' motion.  Warden Bivens argues that to the extent Johnson sues him for actions taken in his official capacity, the claim is barred under the Eleventh Amendment to the United States Constitution.  Warden Bivens is correct that a state and its agents are immune from citizen suits brought in federal court absent state consent or Congressional action.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  Thus, to the extent Johnson seeks to hold Bivens liable for actions taken in his official capacity, those claims cannot proceed.

However, the claims against Warden Bivens for actions taken in his personal capacity are not subject to the same Eleventh Amendment bar to suit.   As to those actions, Warden Bivens points out that he cannot be sued solely for supervising others whose acts or omissions may have caused Johnson constitutional injury.  ECF No. 31-1 at 7.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a

7

recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Accordingly, supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the plaintiff's particular constitutional injury.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The Complaint faults Warden Bivens solely for failing to ensure that medical personnel provided Johnson adequate medical care.  ECF No. 7 at 3.  Bivens attests, however, that as Warden, he retains "no authority to order the contracted medical staff to perform any particular medical procedure or to render any particular treatment, or to recommend that any particular procedure or treatment be performed."  ECF No. 31-2 at ¶ 2.  Bivens is not responsible for monitoring the provision of medical services to inmates.  *Id.*  Along these lines, even when Bivens sustained Johnson's ARP, the most Bivens could do is "educate" the onsite schedulers to "schedule patients as referred" and nurses to "contact providers same day if infection is suspected."  ECF No. 31-5.  From this, no reasonable trier of fact could conclude that Bivens took any individual action in connection with the provision of Johnson's medical care.  Accordingly, summary judgment must be granted in Bivens' favor.

Next, each named medical defendant contends that summary judgment must be granted because no genuine issue of fact supports that any had been deliberately indifferent to Johnson's

medical needs.  ECF No. 23-1.   Under the Eighth Amendment to the United States Constitution, an inmate retains the right to be free from "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  At the summary judgment stage, the inmate must generate some evidence that a prison provider's acts or omissions reflects a deliberate indifference to the inmate's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).  "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences."  *Grayson*, 195 F.3d at 695-96; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting").   A mere disagreement between inmate and physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances.  *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

Deliberate indifference specifically requires the inmate to show that objectively, he suffered from a serious medical need and that, subjectively, the medical provider was aware of the need and either failed to provider or secure proper care.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko*, 535 F.3d at 241 (internal quotation marks and ellipses omitted).

Additionally, the inmate must generate some evidence that defendant exhibited "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839-40.  "True subjective recklessness requires knowledge both of the general risk, and also that the

conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged considering the risk known to the defendant at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000); *see also Jackson*, 775 F.3d at 179.  That said, "negligence or malpractice on the part of … doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).  Adequacy of treatment in this context "is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Defendants do not dispute that Johnson's "chronic onychomycosis" is a serious medical need.  ECF No. 23-1 at 15.  Rather, the they argue that the record, construed most favorably to Johnson does not support a finding of deliberate indifference to that very medical need.  The Court considers each defendant separately.

Turning first to Dr. Nimely, nothing in the record reflects that this doctor ever treated Johnson for his finger.  ECF No. 23-4 at ¶ 4.  Liability under § 1983 attaches only upon the defendant's personal participation in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  Pertinent to treatment for Johnson's finger, Dr. Nimely's name appears in the medical records on only a handful of dates: October 19, 2018, September 5, 2019, and February

12 and 27, 2020.   ECF No. 30-1 at 7, 10, 15, 17.   These records reflect that other providers examined and treated Johnson, and that Dr. Nimely is simply listed as "provider" at the bottom of the page.  *Id.*  Dr. Nimely also attests that the medical records program allows the treating provider to include a physician as a "provider," even when the physician has played no role in the treatment and is not, in fact, the inmate's "provider."  ECF No. 23-4 at 3-4.

Johnson responds that Dr. Nimely's name on the records is sufficient to demonstrate the doctor's "awareness" of his condition.   Even if that is so, mere "awareness" that Johnson was receiving medical care for a fungal infection on his finger does not render Dr. Nimely individually liable for failing to treat that infection with deliberate indifference.[4]  Because no other evidence reflects that Dr. Nimely had treated Johnson's finger, summary judgment is granted as to this defendant.

Next regarding nurse practitioner Ledjo, clearly she directly cared for Johnson at points during his incarceration. But nothing in the record suggests that nurse practitioner Ledjo ever ignored Johnson's symptoms or delayed necessary care.   When Ledjo first examined Johnson in February 2018, she prescribed antibiotics and pain medication.   Ledjo next saw Johnson ten months later, and in the interim, he received consistent follow-on care.   Ledjo recommended removing the nail instead of treating with Lamisil, and Johnson agreed.   Ledjo appears to have followed up after the excision which seemed to have resolved the fungus for nearly one year.

In response, Johnson disputes that Ledjo did enough to treat his infection.   But apart from his mere disagreement with that care, he offers nothing more to demonstrate that Ledjo denied him necessary treatment with deliberate indifference.  *See Wright v. Collins*, 766 F.2d 841, 849 (4th

---

[4] Relatedly, Johnson argues that Dr. Nimely knew of his particular medical needs from his many sick call slips that he submitted.  ECF No. 30 at 1.  But no evidence supports that Dr. Nimely ever saw or reviewed those sick call slips.

Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir.1970))(mere "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." ).  The record, construed most favorably to Johnson, cannot support an Eighth Amendment claim against Ledjo.

Johnson lastly complains that he had been seen by too many doctors and nurses for his infection and that provider continuity was lacking. Although Johnson's concern for continuity of care is understandable, having a roster of medical providers available for care does not alone render that care constitutionally infirm or even inadequate.  And certainly as to nurse practitioner Ledjo; any criticism of having *other* providers involved in Johnson's care cannot be imputed to her. Summary judgement, therefore, must be granted in nurse practitioner Ledjo's favor.

Regarding Dr. Choudry, the Amended Complaint accuses the physician of ignoring Johnson's pain or and failing to secure a surgical consultation. ECF No. 7.  On this record, however, no rational juror could agree with this contention.  Dr. Choudry actually enrolled Johnson in the chronic care program because of Johnson's recurring infection and recommended a surgical consult.  Although Johnson did experience delay in scheduling provider referrals, nothing reflects that Dr. Choudry is responsible for the delay.   Nor does the record support that Dr. Choudry had anything to do with denying Johnson a surgical consult.

To be sure, Johnson believes that he needed surgery for far longer than that which is reflected in the medical records, and so he faults Dr. Choudry for not making the surgical referral sooner.  ECF No. 30 at 2.   The medical records, read most favorably to Johnson, show otherwise. No doubt, Johnson had difficulties with his finger for three years.  But for most of that time, Johnson received consistent medical attention, and nothing supports that during the same time Johnson had needed surgery for which Dr. Choudry denied him.  Rather, in 2020, Johnson received

a timely excision of the nailbed, which seemed to have addressed the problem for many months. Thus, while Johnson understandably wanted a surgical consult when the fungus returned, the record does not support that Dr. Choudry denied Johnson constitutionally adequate medical care. Summary judgment is granted in Dr. Choudry's favor.

IV.     **Conclusion**

For the foregoing reasons, Defendant Bivens' Motion to Dismiss, or in the Alternative, for Summary Judgment is granted.  The Medical Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, is granted.

A separate Order follows.

_8/9/23_____

Date

_____

/S/

Paula Xinis
United States District Judge